[No. 8455.   Department Two.   January 28, 1910.]

P. E. ARIES, *Respondent*, v. ANN MARIE QUAGLIA, *Executrix,* *etc., Appellant.*[1]

INDEMNITY—CONTRACT—CONSTRUCTION.   Defendant's contract to hold the plaintiff harmless from all liability for the rent of certain premises, to the end that plaintiff be released from the payment of any part of said rents, indemnifies the plaintiff from liability upon a contract to pay $25 per month "as a part of the rental of said premises," made in consideration of the execution of a lease to plaintiff's company at $225 per month; and the fact that the $25 was to be paid by plaintiff whether the premises would be occupied or not, does not render it a mere bonus, and not part of the rent, the defendant having notice of the contract calling for the payment as part of the rent.

Appeal from a judgment of the superior court for King county, Gay, J., entered June 24, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on a contract of indemnity. Affirmed.

[1]Reported in 106 Pac. 615.

*McBurney & Cummings*, for appellant.

*Frank B. Wiestling*, for respondent.

DUNBAR, J.—This is an appeal from a judgment of the superior court for King county in favor of the respondent. The action was one upon a contract of indemnity. One M. F. Backus was the owner of the property, which was rented to the Seattle Brewing & Malting Company. For the purpose of getting a sublease of the premises, the respondent entered into a contract with Backus, the essential part of which is as follows:

"That in consideration of the execution of a lease by the said M. F. Backus to the Seattle Brewing & Malting Company, bearing even date herewith, for the premises above described, and for the consideration to be paid by the Seattle Brewing & Malting Company, as above described, the parties of the second part hereto agree to pay to said M. F. Backus, at the Washington National Bank in the city of Seattle, state of Washington, or at the office of the successor of said bank, the sum of $25 per month in advance for the period of two years commencing on the 1st day of June, 1907, and ending on the 31st day of May, 1909; and the parties of the second part agree to pay said sum as a part of the rental for the said premises to the Seattle Brewing & Malting Company whether they, the parties of the second part, shall or shall not occupy the said premises as tenants of the Seattle Brewing & Malting Company during the period covered by the lease of the said M. F. Backus to the said Seattle Brewing & Malting Company. (Duly signed.)"

The rental for the premises from Backus to the malting company had been $225 per month, and this was in effect insuring Backus $25 more a month for the rent of the premises. The sublease was obtained by the respondent, the agreements all being contemporary agreements, the contract between Backus and respondent being executed at the same time that the lease to the brewing company was executed. Subsequently the respondent rented the premises to Michele Quaglia, and an agreement was entered into between them

concerning the business, much of which it is not necessary to set forth here, the pertinent part being as follows:

"And besides, for value received, the said Quaglia does hereby for value received, agree to save and hold harmless the said P. E. Aries and the said J. Andriano and each of them from the payment of money now due and owing or to become due and owing, and from all liability arising out of rents in connection with the said premises at 309 Second avenue south, due or to become due, or accruing, to the end that said P. E. Aries and the said J. Andriano and each of them will be released by the said Quaglia from the payment of any·part of said rents and liability under the holding of possession of said premises."

And other payments were provided for in the agreement. In the course of time Backus sued the respondent in this case for nonpayment of the $25 per month rental as agreed upon, in the sum of $425. When the summons and complaint were served upon the respondent, he gave due notice to Quaglia, demanding that he should defend the action. Said Quaglia paid no attention to this notice. The respondent defended the action, but judgment was entered against him for the amount asked for, and this is an action by the respondent against Michele Quaglia to recover the amount of the judgment which he was compelled to pay Backus.

It is the contention of the appellant, that the liability of the respondent to Backus was not included in the terms of the contract of indemnity sued on herein; that this contract with Backus by the respondent had no reference to rent, but was purely and simply a bonus to actuate him to rent the premises to the malting company; that the respondent might obtain a profitable sublease from the malting company. But a reading of the contract itself between Backus and the respondent conclusively shows that, whatever may have been the arrangement or the conditions of the contract, the intention and effect was to increase the rental from $225 to $250 a month. In fact, the language is explicit on that proposition, as shown by the quotation, "and the parties of

the second part agree to pay said sum as a part of the rental for the said premises to the Seattle Brewing & Malting Company." The appellant urges that the further stipulation that they would pay that amount whether the parties of the second part should occupy the said premises as tenants of the Seattle Brewing & Malting Company or not, tends to show that it was not the intention that the contract should be one of rental, but simply one of bonus. But we hardly see how this provision in the contract could affect that question, or how it could work any different interpretation of the direct provision and statement that it was paid as a part of the rental of the premises, especially in view of the fact that the lease to the brewing company and the contract with Backus and the sublease to the respondent were contemporaneous.. That the liability was included in the terms of the contract of indemnity sued on is evidenced by the fact that they hold Aries and Andriano harmless from all liability arising out of rents in connection with such premises, and from the payment of any part of said rents and liabilities under the holding of possession of said premises. Certainly this was a liability under the holding of the possession of said premises. A liability of the respondent to Backus being such liability must have been covered by the contract between Backus and Quaglia.

The next proposition urged is that, assuming that an obligation of the character of the respondent's liability to Backus was included in the terms of the contract of indemnity, the evidence was sufficient to sustain the appellant's contention that Quaglia's signature to the contract of indemnity was secured through the misrepresentation of the respondent. On that proposition the court found that, when the contract was entered into between the respondent and Quaglia, the latter knew of the liability from the respondent to Backus and assumed the same, and knew of the claim for additional rent of the' said premises on the part of said Backus and assumed the same. The court also found that

on the 10th of March, 1908, the respondent was sued by Backus on his breach of the condition of the contract, and judgment recovered, that due notice was given, and that Quaglia had refused and neglected, and still refuses, to pay off the said liability; and, as a conclusion of law, that the respondent was entitled to judgment against Quaglia for the sum of $425, with interest, etc.

We think, without an extended review of the testimony, that the court was justified in finding that Quaglia was not induced to sign the contract which he did sign through any fraud, deceit, or concealment on the part of the respondent; but that the evidence shows that at least, whatever Quaglia's understanding of things may have been, his acknowledged agent in the transaction—Mr. Buty—was fully aware of this liability on the part of the respondent in connection with the renting of this house. It is true that, while they were talking about the matter, the respondent, Quaglia, and the agent, Mr. Wiestling, attorney for the respondent, stated to them that he doubted if any consideration could be shown for the agreement between the respondent and Backus, and doubted if the contract could be enforced. But it was not a positive expression even of what the attorney thought the law was, and in any event, Quaglia knowing of the contract and knowing that he was bound to the respondent to pay all the contracts under which the respondent was obligated to Backus growing out of the rental of this property, it became his duty to defend the action against Backus for violation of that contract; and when he contracted to do so, he took his chances on the power of Backus to enforce such contract.

We are unable to discover any error of the court in any particular, and the judgment will be affirmed.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.